**UNITED PRODUCTION CORPORATION**
**v. CHESSER et al.***

**No. 8431.**

Circuit Court of Appeals, Fifth Circuit.

Feb. 24, 1938.

C. M. Hightower, of Houston, Tex., and J. Turner Vance, of Refugio, Tex., for appellant.

Josh H. Groce, of San Antonio, Tex., and J. W. Ragsdale, of Victoria, Tex., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Frank E. Thornhill was killed while at work for Baash-Ross Tool Company on premises of United Production Corporation. Compensation under the Texas Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq., was awarded his widow and children and was paid by the insurance carrier. The widow and children then brought the present suit for their own benefit and that of the insurance carrier against United Production Corporation, asserting that the death was due to its negligence in not furnishing Thornhill a safe place to work, in having a defective "goose-neck" on its oil derrick, which goose-neck broke and fell with the mud hose attached to it and struck Thornhill, and in failing properly to attach a safety chain to prevent such fall should the goose-neck break. A recovery was had, and United Production Corporation appeals, assigning as error the refusal of the court to instruct a verdict in its favor.

The evidence is that United Production Corporation had drilled a well for oil, but desired to use it to produce gas by perforating the casing near the bottom. The Baash-Ross Tool Company had a patented tool to accomplish this which was lowered into the well by the drill stem, and the drill stem was raised about 3 feet and dropped upon the tool until it punched the desired holes in the sides of the casing. The tool company undertook to accomplish the perforation under a written contract reading in part as follows: "Baash-Ross Tool Company hereby guarantees all perforating, provided the person or company ordering same shall have the well casing in good condition at the time of commencing operations and shall so inform said Baash-Ross Tool Company. * * * The person or company for whom the work is done shall furnish all necessary power and appliances or tools (ex-

* Rehearing denied, see 95 F.2d 521.

cept perforating machine) and all labor, exclusive of the perforator operator, for properly perforating the well and also for removing the perforating machine therefrom on completion." Thornhill was sent with the machine as perforator operator. He put it on the drill stem and lowered it into the well; Ferguson, the superintendent of United Production Corporation, and his assistants controlling the movements of the drill stem under the direction of Thornhill. At the top of the drill stem 30 feet up in the derrick was the "gooseneck," a curved pipe-fitting, fastened rigidly to the swivel on the drill stem and supporting the end of the large hose through which the drilling fluid was pumped down the drill stem. The hose filled with fluid weighed several hundred pounds. In drilling operations the goose-neck supported only the weight of the hose, but when the drill stem was raised and dropped in perforating operations the hose would jerk the goose-neck putting a more severe strain upon it. Ferguson and others who were drillers say they never saw a goose-neck break. The superintendent of the tool company testified he had seen three or four break, that he knew goose-necks would break, and the danger attending that. There was on this rig a safety chain attached one end to the end of the hose and the other to the goose-neck to catch the hose should it blow off the goose-neck. If the goose-neck should break, it would do no good thus attached. If attached to the swivel, it would hold the hose whether it should blow off or the goose-neck break. Just before noon of the day in question as the drill stem was dropped on the perforating tool the goose-neck broke, but the chain, which was attached to the swivel, held the hose. The rig was lowered and a new goose-neck was bolted on and the chain attached, not to the swivel, but to the goose-neck. Thornhill went with Ferguson to get the new goose-neck, and was present when it was attached, or certainly the operation and the attachment of the chain was in plain view. On resuming operations under Thornhill's directions, this new goose-neck broke and the hose fell and killed him. The metal of the goose-neck was found to have internal flaws constituting a latent defect.

The tool company was an independent contractor engaging to accomplish a stated result. Thornhill was its representative, and not the employee of United Production Corporation. The latter was furnishing appliances and labor to be used by Thornhill in the tool company's work. United Production Corporation did not owe Thornhill the duties of a master to a servant, but it owed him as a business invitee ordinary care to have safe premises and appliances for his use. The defect in the last goose-neck was latent. The goose-neck was of standard manufacture and no negligence can be found in using it. The hose was necessary to be attached for use in case the well should begin to blow out. In view of the experience when the first goose-neck broke that morning, negligence could be found in having the safety chain attached to the goose-neck instead of to the swivel; and this notwithstanding Ferguson and his men say attaching it to the goose-neck was the usual practice. But Thornhill and those claiming under him cannot complain of this negligence. He could have controlled the attachment of the safety chain. His superintendent testified that there was danger of the goose-neck breaking in their business; and Thornhill as an experienced man must have known it. His using the drill stem as a hammer obviously put an extraordinary strain on the goose-neck, and he should have looked specially to the probable consequences, illustrated by the first breaking that very morning. The attachment of the safety chain to the goose-neck instead of to the swivel was done in his presence and open to his observation. If he did not look to see how the rig was set up for his work, he was himself contributorily negligent. If he did look, he assumed the risk of using it as it was. As the evidence stands, we think the verdict should have been instructed for the defendant.

The judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.

Reversed.